UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KENDRA THIBAULT, *in her*
*Capacity as* GUARDIAN of
JHAMAL GONSALVES and
TIA TRIBBLE, *in her Capacity as*:
GUARDIAN of JHAMAL GONSALVES

      v.                                           C.A. No. 1:21-CV-00021-WES-LDA

HUGH T. CLEMENTS, JR.,
*Individually and in his official capacity*
*as Chief of Police of the Providence*
*Police Department;*
STEPHEN PARÉ, *Individually and*
*in his official capacity as Commissioner of Public*
*Safety for the City of Providence;*
KYLE ENDRES, *Individually and in his*
*Official Capacity as an Officer in the*
*Providence Police Department;*
BRAD McPARLIN, *Individually and in his*
*Official Capacity as an Officer in the*
*Providence Police Department;*
THE CITY OF PROVIDENCE, *by and*
*through its Treasurer* BETH MUNSON and
OFFICERS JOHN AND JANE
DOES, ALIAS 1-10, *in their Individual*
*and Official Capacities*

**DEFENDANTS', HUGH T. CLEMENTS, JR., STEVEN PARÉ, AND THE CITY OF
PROVIDENCE'S, BY AND THROUGH ITS TREASURER, JAMES J. LOMBARDI, III,
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

        NOW COME Defendants Hugh T. Clements, Jr., Steven Paré, and the City of Providence

and hereby submit the within memorandum in support of their motion to dismiss Plaintiffs'

Complaint for failure to state a claim upon which relief can be granted.

I.      Facts

On or about October 18, 2020, Jhamal Gonsalves alleges he was operating a moped scooter on Elmwood Avenue in the City of Providence, Rhode Island when "Mr. Gonsalves lost control of his moped which went onto the sidewalk [of Bissell Street] and struck a wall, ejecting Mr. Gonsalves from his scooter." E.C.F. No. 1, ¶4. Mr. Gonsalves alleges certain Providence Police Officers made vehicular maneuvers that caused him to lose control of his scooter and crash, resulting in his injuries. E.C.F. No. 1, ¶¶ 3-4.

On or about January 13, 2021, Kendra Thibault and Tia Tribbel, as guardians of Mr. Gonsalves filed suit in this Honorable Court. Plaintiffs' complaint contains nineteen counts. This motion concerns counts four (4), twelve (12), seventeen (17), eighteen (18), and nineteen (19).

Specifically, Plaintiffs allege in count four (4) a violation of R.I. Gen. Laws §31-33-6 against defendants Endres, McParlin, and the City of Providence, making the following allegation:

> 61. At all times relevant hereto, defendants Endres and McParlin were operating the motor vehicles owned by the City of Providence with the City's full knowledge and consent.
>
> 62. Defendant City of Providence, as owner of the motor vehicles being operated by defendant John and Jane Does Alias 1-20, is liable to Gonsalves pursuant to R.I.G.L. 31-33-6. E.C.F. No. 1, ¶61, 62.

In count twelve (12), plaintiffs allege a violation of R.I. Gen. Laws §31-33-6, making the following allegation:

> 115. At all times relevant hereto, defendants John and Jane Does, Alias 1-10 were operating the motor vehicles owned by Defendant City of Providence with the City's full knowledge and consent.
>
> 116. Defendant City of Providence, as owner of the motor vehicles being operated by defendant John and Jane Dos Alias 1-20, is liable to Gonsalves pursuant to R.I.G.L. 31-33-6. E.C.F. No. 1, ¶115, 116.

Plaintiffs allege in count seventeen (17), 42 U.S.C. § 1983 Supervisory Liability Against Defendants Clements and Paré. In support of this count, Plaintiffs make the following allegations:

2

145. By reason of the foregoing, defendants Clements and Paré, supervisory personnel of defendant Officers Endres and McParlin, acted with reckless disregard and deliberate indifference in hiring, screening and training of defendant Officers Endres and McParlin.

146. The failure of defendants Clements and Paré to provide adequate training, education and discipline of defendants Endres and McParlin has resulted in the denial of Gonsalves's rights, protected by the Fourth and Fourteenth Amendments to the United States Constitution.

147. As a direct and proximate result of the actions by defendants Clements and Paré, Gonsalves has endured physical pain and suffering and incredible emotional distress; moreover, Gonsalves has incurred medical bills, lost wages, and will continue to incur future medical bills, pain and suffering, and lost wages. E.C.F. No. 1, ¶¶145-147.

In count eighteen (18), 42 U.S.C. § 1983 against the City of Providence, Plaintiffs

specifically allege:

150. Defendant City of Providence developed and maintained customs, policies, and/or practices exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Gonsalves's rights.

151. It was the custom, policy, and/or practice of the City of Providence to provide no training or grossly inadequate training to its police officers regarding the following: their duties, responsibilities and conduct towards citizens; use of force; vehicular pursuit of individuals; tactics for approaching and otherwise de-escalating situations with the citizens so as to avoid the victimization and wrongful injury of citizens by police officers and the safe operation of police vehicles.

152. It was the policy and/or custom or practice of the City of Providence to conduct grossly inadequate screening in the hiring of its police officers regarding the officers' propensities for violence, abuse of authority and bias towards citizens.

153. It was the policy and/or custom or practice of the City of Providence to provide grossly inadequate supervision, discipline, and remediation to officers.

154. The City of Providence has been deliberately indifferent in training, supervising and disciplining officers regarding their duties, responsibilities and conduct towards citizens; use of force; preventing abuse of authority; and, tactics for approaching and otherwise de-escalating situations with the citizens, so as to avoid the victimization of citizens.

155. The City of Providence has been deliberately indifferent in screening and hiring officers, who demonstrate their propensities for violence, abuse of authority and bias towards citizens.

156. As a direct and proximate result of the foregoing acts, omissions, systemic deficiencies, and deliberate indifference on the part of the City of Providence, Gonsalves was deprived of his constitutional rights and injured.

157. The above-described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of Providence to the constitutional rights of persons within the Town, and were the cause of the violations of Gonsalves's rights alleged herein.

158. As a direct and proximate result of the actions by defendants Clements and Paré, Gonsalves has endured physical pain and suffering and incredible emotional distress; moreover, Gonsalves has incurred medical bills, lost wages, and will continue to incur future medical bills, pain and suffering, and lost wages. E.C.F. No. 1, ¶¶150-158.

Finally, in count nineteen (19) for vicarious liability against the City of Providence,

Plaintiffs allege:

161. Defendants Endres and McParlin were employees, agents and/or servants of defendant City of Providence and were acting within the scope of their employment at all times relevant hereto.

162. Defendants John and Jane Does, Alias, 1-10 were employees, agents and/or servants of defendant City of Providence and were acting within the scope of their employment at all times relevant hereto.

163. Defendant City of Providence was at all relevant times vicariously responsible for the acts of its employees, agents and/or servants, including, but not limited to, the acts of defendants Endres, McParlin and John and Jane Does, Alias 1-10.

164. As a direct and proximate result of the actions by defendants Endres, McParlin, John and Jane Does, Alias 1-10, and the City of Providence, Gonsalves has endured physical pain and suffering and incredible emotional distress; moreover, Gonsalves has incurred medical bills, lost wages, and will continue to incur future medical bills, pain and suffering, and lost wages. E.C.F. No. 1, ¶¶161-164.

Counts four (4) and twelve (12) are unconstitutional as applied to this municipal defendant, and thus should be dismissed. Counts seventeen (17), eighteen (18), and nineteen (19) of Plaintiffs' complaint should be dismissed as these counts do not meet the applicable pleading standard set forth in Ashcroft et al. v. Iqbal et al., 556 U.S. 662 (2009). Moreover, all counts should be

dismissed because supervisory liability under §1983 may not be predicated upon a theory of respondeat superior.  <u>Gutiérrez-Rodríguez v. Cartagena,</u> 882 F.2d 553, 562 (1st Cir.1989).

## II.     Applicable Standard

When ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint and must view them in the light most favorable to the non-moving party. <u>Erickson v. Pardus,</u> 551 U.S. 89, 94 (2007). The burden is upon the moving party to establish that the Plaintiffs can prove no possible facts in support of their claim that would entitle them to relief. <u>Harper v. Cserr</u>, 544 F.2d 1121, 1122 (1st Cir. 1976).

In consideration of this motion, pursuant to Rule 12(b)(6), the court must take all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 442-43 (1st Cir. 1992). Well-pleaded facts, however, do not include the Plaintiff's unsupported conclusions or interpretations of law. <u>Washington Legal Foundation v. Massachusetts Bar Foundation</u>, 993 F.2d 962, 971 (1st Cir. 1993). Further, a District Court does not have to accept subjective characterizations, bald assertions, or conclusory descriptions and indeed such allegations should not survive a motion to dismiss. <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52-53 (1st Cir. 1990).

The Plaintiff must set forth factual allegations either direct or inferential regarding each material element necessary to sustain recovery.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads the facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement relief'. <u>Ashcroft et al. v. Iqbal et al.</u>, 556 U.S. 662, 677-78 (2009) (internal citations omitted).

It is important to note that when ruling on a motion to dismiss, the trial court is charged with determining whether a plaintiff has carried his or her entry-level burden in sketching the parameters of a viable claim, to thus entitle the plaintiff to undertake engaging in discovery at all. Notably, the purpose of discovery "is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action." McCloskey v. Mueller, 446 F.3d 262, 271 (1st Cir. 2012).

### III.   Argument

    a. **Defendants' Clements, Paré, and the City of Providence's, motion to dismiss should be granted as to counts seventeen (17) and eighteen (18) because Plaintiffs' complaint includes numerous conclusory allegations not entitled to the assumption of truth under Ashcroft v. Iqbal.**

Count seventeen (17) alleges a violation of 42 USC §1983 against Defendants Clements and Paré; count eighteen (18) asserts a violation of 42 USC §1983 against Defendant City of Providence. Each of these counts are subject to the pleading standards established in Ashcroft et al. v. Iqbal et al., 556 U.S. 662 (2009).

When evaluating a plaintiff's complaint, the Ashcroft v. Iqbal standard requires the court to "separate the wheat from the chaff; that is, separate the complaint's factual allegations (which must be accepted as true) from its conclusory allegations (which need not be credited)." Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012), citing Ashcroft et al. v. Iqbal et al., 556 U.S. 662, 678-80 (2009). Then, "the court must determine whether the 'factual content…allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged.'" Id. If the factual allegations are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Morales-Cruz, 676 F.3d at 224; citing SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc); See also, Chao v. Ballista, 630 F.Supp.2d 170, 177 (Mass. 2009) ("A complaint should only

be dismissed at the pleading stage where the allegations are so broad, and the alternative explanations so overwhelming, that the claims no longer appear plausible.") Under the <u>Ashcroft v. Iqbal</u> analysis, a complaint cannot stand "on the 'sheer possibility' that a defendant acted unlawfully or on facts that are merely consistent with a defendant's liability. <u>Ocasio-Hernandez</u>, 620 F.3d at 11; citing <u>Iqbal</u>, 556 U.S. at 678. The inquiry must focus on the "reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." <u>Ocasio-Hernandez</u>, 620 F.3d at 13.

In engaging in the first step of the analysis, the <u>Iqbal</u> Court determined that the legal conclusions in that complaint were <u>not</u> entitled to the assumption of truth because it simply stated the petitioners "knew of, condoned, and willfully subjected [Plaintiff] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest;" that then-Attorney General John Ashcroft was the "principal architect" of the invidious policy; and that then-FBI director Robert Mueller was "instrumental" in adopting and executing it. 556 U.S. at 680-1. The Court concluded that these were "bare assertions" and amounted to "nothing more than a formulaic recitation of the elements of a discrimination claim," and therefore were not entitled to be assumed true. <u>Id</u>. The Court then turned to the factual allegations to see if they plausibly suggested an entitlement to relief. <u>Id</u>. The Court deemed not adequate factual allegations that stated: "the FBI, under the direction of Defendant Mueller, arrested and detained thousands of Arab Muslim men… as part of its investigation of the events of September 11" and that "the policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were cleared by the FBI was approved by Defendants Ashcroft and Mueller." <u>Id</u>. at 681. The Court essentially disregarded these factual allegations as there were obvious alternative explanations for plaintiff's arrest and

detention, namely, that because it was known that the September 11th hijackers were Arab Muslims as was Osama bin Ladin, with whom the hijackers affiliated, it would be no surprise that arrests would have a disproportionate, incidental impact on Arab Muslims. Id. Hence, the Court concluded the purposeful, invidious discrimination that plaintiff sought to have the Court infer was not a plausible conclusion under this set of facts. Id.

In the instant matter, it is abundantly clear that as it pertains to the first step of this analysis, counts seventeen (17) and eighteen (18) of Plaintiffs' complaint contain the same type of conclusory allegations that Iqbal indicated are not entitled to the assumption of truth. The paragraphs contained in the counts themselves merely use conclusory language that largely mimics the law of supervisory liability and municipal liability under Monell, or in the words of Iqbal, is simply a "formulaic recitation of elements." 556 U.S. at 680-1; See also, attached as Exhibit A, Transcript of Decision at 7, John Prince, Jr. v. City of Providence, et al, 15-378 (D.R.I., Feb. 11, 2016) (Judge John J. McConnell, Jr., in dismissing Colonel Hugh Clements and Commissioner Steven Paré from a §1983 civil action, stated, "conclusory statements that parrot the elements of a cause of action….[do] not pass the plausibility test.").

Under the theory of supervisory liability, supervisors at times can be held liable for the actions of their subordinates. Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Liability can attach if the individual supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task may contribute to a constitutional violation. Id. However, a plaintiff must prove an "affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation." Morales v. Chadbourne, 793 F.3d 208, 221 (1st 2015).  In count seventeen (17) for supervisory liability against Defendants Clements and Paré,

the allegations amount to no more than the formulaic recitation of these elements of a supervisory liability claim and nothing more. Plaintiffs simply allege Clements and Paré acted "with reckless disregard and deliberate indifference in hiring, screening and training" and failed to "provide adequate training, education and discipline of defendants" and that this failure "resulted in the denial of Gonsalves's rights." E.C.F. No. 1, ¶¶145, 146. As is clear, Plaintiffs' allegations are merely conclusory, not factual, and simply parrot the elements of a supervisory liability claim and therefore are not entitled to the assumption of truth, similar to Iqbal wherein the allegations that defendants "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest" similarly was not entitled to the assumption of truth and instead amounted to no more than a formulaic recitation of the elements of a discrimination claim. Iqbal, 556 U.S at 680-81. Notably, there are no additional facts in count seventeen (17) whatsoever to consider as to the basis of the supervisory liability claim, or for that matter in the entire complaint, and thus, plaintiffs do not come close to overcoming the Iqbal hurdle as it pertains to supervisory liability. This is notably different from Morales v. Chadbourne, where the First Circuit determined that sufficient factual allegations existed for purposes of pleading, and hence, it was plausible that ICE agents and their superiors either formulated or enacted a policy with deliberate indifference of issuing detainers against naturalized citizens.[1] 793 F.3d 208, 222 (1st Cir. 2015). There, the plaintiff offered statements in her complaint that she was a naturalized citizen, was detained two (2) times by ICE agents, had told them she was previously detained during her second detention, and they never responded they would remedy the issue, which reinforced her fears. Id. Furthermore, Plaintiff included the fact that her attorney called ICE to

---

[1] Morales v. Chadbourne is a so-called *Bivens* action against federal agents for violations of constitutional rights, however the same Iqbal pleading rules apply. 793 F.3d 208, 221-22 (1st Cir. 2015).

inform them that her detentions were unlawful, at which time ICE agents responded by telling her that the erroneous detention of US citizens happens not infrequently, that ICE routinely issues detainers against naturalized citizens, and the if the Plaintiff were arrested again, ICE would likely put a detainer on her. Id. The First Circuit there concluded that based upon the facts provided, it was plausible that the supervisors there either formulated and implemented a policy of issuing detainers against U.S. citizens without probable cause or were deliberately indifferent to the fact that subordinates were doing the same. Id. The allegations in the instant matter do not come anywhere close to that alleged in Morales. At most, the factual allegations that are included in the complaint, indicate a singular traffic accident involving potentially two officers without any tangible affirmative link to Defendants Clements and Paré. The bald assertions do not pass the plausibility test, and therefore count seventeen (17) should be dismissed and Defendants Clements and Paré should be dismissed from this action.

In order to establish municipal liability, a plaintiff must prove that the plaintiff's harm was caused by a constitutional violation emanating from a policy or custom attributable to the municipality and that the municipality possessed the requisite level of fault, generally labeled as deliberate indifference. Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005) (discussing the "very high bar" the Supreme Court has set for assessing municipal liability under Monell.). This is because the plaintiff must establish the municipality *itself* caused the violation and is not simply being held accountable under a theory of respondeat superior. Williams v. Bisceglia, 115 F.Supp.3d 184, 188 (Mass. 2015).  At the pleading stage, therefore, a plaintiff is required to allege sufficient facts as to municipal liability so that it appears the claim is facially plausible. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011).

In count eighteen (18) for §1983 municipal liability, the plaintiffs include legal conclusions that are not entitled to the assumption of truth under Iqbal. Specifically, plaintiffs state that the City of Providence "developed and maintained customs, policies, and/or practices exhibiting deliberate indifference to the constitutional rights of its citizens" E.C.F. No. 1 at ¶150; See Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690 (1978) (Discussing that municipal liability can be imposed when a policy statement, ordinance, custom, regulation, or decision causes an employee to violate another's constitutional rights). Once again, this allegation from the plaintiffs' complaint is simply a formulaic recital of the basic elements of a Monell claim, and thus at least this portion of the count is not entitled to the assumption of truth under Iqbal. There is, however, unlike the count for supervisor liability, additional verbiage contained in count eighteen (18), to be discussed infra.

> b. **Plaintiffs' Complaint includes alleged facts in support of conclusory allegations that are not facially plausible and do not support the inference of municipal liability, and therefore are inadequate under Ashcroft v. Iqbal.**

As stated above, once a court has determined conclusory allegations exist, "the court must determine whether the 'factual content…allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged.'" Morales-Cruz, 676 F.3d at 224. If the factual allegations are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id.; citing SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc). Such is the case with the alleged "facts" in count eighteen (18) for municipal liability.

The First Circuit has utilized the teachings of Ashcroft v. Iqbal in ruling that a complaint should be dismissed when the facts contained in a complaint did not meet the facially plausible standard. Saldivar v. Racine, 818 F.3d 14, 20 (1st Cir. 2016). In Saldivar, the Court found that a

police officer's supervisor and the City of Fall River should be dismissed from a §1983 action when the plaintiff failed to allege sufficient facts to plausibly show that the supervisor and the municipality had the requisite notice of the risk that the defendant would commit a sexual assault when responding to a service call. Id. at 18-20. The complaint alleged that the defendant officer had a number of disciplinary violations, none of which indicated he had a propensity for violence, which the court ultimately rejected.  Id. at 19. The court similarly rejected what the Plaintiff argued was a reasonable inference that because the defendant officer had a propensity to not follow regulations, he may not follow other regulations in the future. Id. The court found that under the facts alleged, it was not plausible that the supervisor or the municipality was on notice to the type of harm caused by the defendant and on which the §1983 claim was based and therefore dismissed the matter. Id. at 19-20.

The First Circuit applied the analysis of Ashcroft v. Iqbal and found factual allegations in a §1983 complaint as sufficient in establishing a facially plausible case of political discrimination in Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14-18 (1st Cir. 2011).[2] There, the court found that the plaintiffs had adequately pled facts demonstrating both the defendants' awareness of the plaintiffs' political affiliation and that it was a substantial or motivating factor for the adverse employment decision, both of which are elements of a political discrimination claim. Id. at 13-18. In addition to other facts not mentioned herein, the court found the following facts to be sufficient facts in the complaint, specifically:

1) Plaintiffs were replaced at their employment by individuals affiliated with the ruling party, Id. at 14;

---

[2] While the Defendant acknowledges this was not a municipal liability case, the teachings regarding the type of notice and factual allegations contained therein is instructive in showing what level of allegations are needed to sufficiently plead a §1983 case.

2) Loyalists to the ruling party were promoted. Id. at 18;

3) Plaintiffs had been questioned by defendants about the circumstances of their hires in order to discern political affiliation, Id.;

4) The ruling first lady made comments such as "changes had come" and it was her intention to "clean up the kitchen," Id. at 17;

5) The governor was quoted as stating that those who would be terminated "did not vote for him," Id. at 16; and

6) The chief of staff was alleged to lie to the press for the reason for the plaintiffs' termination as being they had access to confidential information and performance evaluations were being conducted. Id. at 17.

The court found that the above, in addition to other facts not mentioned herein, at the motion to dismiss stage, supported the reasonable inference that the employment decisions made by the new government were in fact politically motivated and thus the allegations "nudg[ed] their claim of political discrimination across the line from conceivable to plausible."3 Id. at 19; citing Iqbal, 556 U.S. at 680. This plausibility standard requires "more than a sheer possibility that a defendant acted unlawfully." Iqbal, 556 U.S. at 678. The court must be able to infer more than the "mere possibility of misconduct." Id. at 679. The factual allegations in Plaintiff's complaint, clearly do not come close to meeting this standard. The factual allegations here do not even get the Plaintiff to the "possibility" of misconduct on the part of the Defendant, let alone beyond it, as is required. The

---

3 See also, Morales v. Chadbourne, where the First Circuit determined that sufficient factual allegations existed for purposes of pleading, and hence, it was plausible that ICE agents and their superiors either formulated or enacted a policy with deliberate indifference of issuing detainers against naturalized citizens. 793 F.3d 208, 222 (1st Cir. 2015). There, the plaintiff offered statements that she was a naturalized citizen, was detained two (2) times by ICE agents, had told them he was previously detained during her second detention, and they never responded they would remedy the issue, which reinforced her fears. Id. Furthermore, Plaintiff included the fact that her attorney called ICE to inform them that her detentions were unlawful, at which time ICE agents responded by telling her that the erroneous detention of US citizens happens not infrequently, that ICE routinely issues detainers against naturalized citizens, and the if the Plaintiff were arrested again, ICE would likely put a detainer on her. Id.

statements in plaintiffs' complaint as to count eighteen (18) can hardly be considered factual allegations of the quality contained in Ocasio-Hernandez or Morales Chadbourne. See E.C.F. No. 1, ¶¶151-155. In fact, the lists contained therein are more tantamount to additional legal conclusions not entitled to the assumption of truth. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations."). However, with that said, in viewing the complaint in the light most favorable to the non-moving party, even if considered facts instead of legal conclusions, the information contained therein does not nudge their claim from conceivable to plausible. Iqbal, 556 U.S. at 680.

Count 18 of the complaint alleges, in relevant part:

151. It was the custom, policy, and/or practice of the City of Providence to *provide no training or grossly inadequate training to its police officers regarding the following: their duties, responsibilities and conduct towards citizens; use of force; vehicular pursuit of individuals; tactics for approaching and otherwise de-escalating situations with the citizens so as to avoid the victimization and wrongful injury of citizens by police officers and the safe operation of police vehicles.*

152. It was the policy and/or custom or practice of the City of Providence to *conduct grossly inadequate screening in the hiring of its police officers regarding the officers' propensities for violence, abuse of authority and bias towards citizens.*

153. It was the policy and/or custom or practice of the City of Providence to *provide grossly inadequate supervision, discipline, and remediation to officers.*

154. The City of Providence has been deliberately indifferent in *training, supervising and disciplining officers regarding their duties, responsibilities and conduct towards citizens; use of force; preventing abuse of authority; and, tactics for approaching and otherwise de-escalating situations with the citizens, so as to avoid the victimization of citizens.*

155. The City of Providence has been deliberately indifferent in *screening and hiring officers, who demonstrate their propensities for violence, abuse of authority and bias towards citizens.* E.C.F. No. 1 at ¶¶151-155 (Emphasis added).

Aside from being repetitive as to the alleged unnamed deficiencies in policies and training, the foregoing contains nothing more than legal conclusions masquerading as facts in an attempt to

support the claim of municipal liability. They fall well short of the specific information provided in <u>Ocasio-Hernandez</u> in support of the alleged political discrimination claim. These statements are more akin to those in <u>Saldivar</u> wherein there is insufficient factual detail to plausibly show the municipality through custom, policy, practice or otherwise actually engaged in deliberatively indifferent conduct as to the plaintiff's constitutional rights. Instead, the paragraphs here contain an unspecified laundry list of police policies without further elaboration, just as in Saldivar the allegation that the defendant had a number of disciplinary violations was not sufficient in detail to demonstrate supervisory liability or in the words of Iqbal, the allegations "stop short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted) 556 U.S at 678.

In <u>Santiago v. Fenton</u>, 891 F.2d 373 (1st Cir. 1989), the plaintiff "made boilerplate allegations that Police Chief Fenton and the City of Springfield were aware, or should have been aware, of prior incidents of excessive force, false arrest and false imprisonment. He did not allege any specific facts beyond the immediate incident." <u>Id. at</u> 380. The complaint lacked specific facts to support the allegations, rather, the complaint merely "alleged that the City and police chief were responsible for his injuries based on unconstitutional policies and customs related to the training and discipline of police officers." <u>Id.</u> at 378. The complaint at issue in <u>Santiago,</u> contained similar boilerplate allegations as the complaint at issue here. <u>citing</u> <u>See, e.g.</u>, <u>Rodriguez v. Avita</u>, 871 F.2d 552 (5th Cir.1989); <u>Strauss v. City of Chicago</u>, 760 F.2d 765 (7th Cir.1985); <u>Scarpa v. Murphy</u>, 624 F.Supp. 33 (D.Mass.1985); <u>Smith v. Ambrogio</u>, 456 F.Supp. 1130 (D.Conn.1978). <u>But see, e.g.</u>, <u>Berquist v. County of Cochise</u>, 806 F.2d 1364 (9th Cir.1986); <u>Holland v. Breen</u>, 623 F.Supp. 284 (D.Mass.1985). This court also has emphasized the importance of specific factual pleading. *Serrano v. Torres,* 764 F.2d 47, 48 (1st Cir.1985); *Dewey*

*v. Univ. of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982). The same reasoning should be applied here to find that Plaintiffs' complaint is insufficient.

Additionally, the facts as stated in the Plaintiffs' complaint fail to demonstrate that Defendants Clements, Paré, or the City of Providence was put on notice of potential violations of *constitutional rights* that were or could be committed by its officers. In McElroy v. City of Lowell, on defendant's motion to dismiss that was ultimately granted, the Court stated that when dealing with a policy or custom rather than an actual written policy, as we are here, "significantly more is needed to show sufficient causal connection between the municipal conduct and the deprivation of federally-protected rights." 714 F.Supp.2d 349, 355 (D. Mass. 2010). The court stated that "a pattern of constitutional violations coupled with a failure on the part of the municipality to properly respond…could permit the inference of the requisite knowledge and corresponding inaction needed to satisfy the deliberate indifference element." (Emphasis added) Id. at 356. There, the Court found that the plaintiff pointed to no pattern of constitutional violations or to any other fact that would allow for the inference that the City of Lowell had requisite knowledge of the risk to its citizens' constitutional rights. Id. Similarly here, there is nothing in this complaint that even remotely alleges Defendants Clements, Paré and the City of Providence had the requisite knowledge of risks of violations of Plaintiff's constitutional rights.

Therefore, for all of the reasons set forth supra, the allegations in Plaintiffs' complaint simply do not support the inference that Defendants Clements, Paré, or the City of Providence acted unlawfully as is required in Iqbal. Without more, Plaintiffs' complaint fails to state a claim upon with relief may be granted because the complaint fails to allege specific facts that would tend to prove that Clements, Paré, or the City had knowledge of violations of constitutional rights of its citizens similar to that as alleged in the instant case. See E.C.F. No. 1, generally. To so infer any

16

type of notice of constitutional violations to the Defendant under these facts would be tantamount to speculation and conjecture, clearly improper in light of the pleading standards. <u>Morales-Cruz v. University of Puerto Rico</u>, 676 F.3d 220, 224 (1st Cir. 2012).

> **c.    The Motion to Dismiss as to counts seventeen (17), eighteen (18), and nineteen (19) should be granted in favor of Defendants Clements, Paré, and the City of Providence because supervisory liability and municipal liability under §1983 may not be predicated upon a theory of respondeat superior.**

In <u>Iqbal</u>, the Supreme Court clarified what a plaintiff must plead to assert a claim for supervisory liability under 42 U.S.C. §1983. The Court began by reiterating the well-established principle that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of <u>respondeat superior</u>." <u>Id.</u> at 676.  As a corollary to that principle, the Court observed that, "[b]ecause vicarious liability is inapplicable to <u>Bivens</u> and §1983 suits, a plaintiff must plead that each Government-official defendant, <u>through the official's own individual actions</u>, has violated the Constitution." <u>Id.</u> (Emphasis added); <u>accord Soto-Torres v. Fraticelli</u>, 654 F.3d 153, 158 (1st Cir. 2011). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable <u>for his or her own misconduct</u>." <u>Iqbal</u>, 556 U.S. at 677 (Emphasis added). In applying that rule to the case before it, the Court soundly rejected the notion that a supervisor's mere knowledge or acquiescence in a subordinate's actions could serve as the basis for a supervisory liability claim under § 1983.  <u>See Id.</u> (rejecting argument that supervisors "can be liable for 'knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees'").

In <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 582 (1st Cir.1994), the First Circuit noted that: "supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he 'may be liable for the foreseeable consequences of such conduct if he would have known of it but for his ***deliberate indifference or willful blindness.'''***

Id. (emphasis added). To prove the requisite "deliberate indifference" a plaintiff must show not only:   (1) a grave risk of harm; but also (2) the defendant's actual or constructive knowledge of that risk; and (3) his failure to take easily available measures to address the risk. See Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992).

Thus, even if one were to assume for argument's sake that there was a grave risk of harm associated with the supervision or training failures alleged by Plaintiffs, they also must establish that Clements, Paré, and/or the City of Providence had actual or constructive knowledge of this grave risk in the complete absence, not only of any prior *similar* incidents, but in the complete absence of *any* incidents, similar or not, involving the conduct alleged by Plaintiffs. In the instant matter, Plaintiffs have failed to allege, never mind establish this principle.

The need for evidence "clearly establishing" notice was emphasized by the Supreme Court in Board of County Commissioners v. Brown, 520 U.S. 397, 408, 117 S.Ct. 1382, 137 L.Ed.2d 626 (U.S. 1997) where the plaintiff, who was injured after excessive force was employed during an arrest, claimed that the county sheriff was liable for having negligently hired the offending party, relying on evidence that the sheriff had failed to perform an adequate background check before hiring the arresting officer.  See Id. at 401. In rejecting the claim, the Court analogized to inadequate training cases like this one and held that a qualified immunity defense should not be defeated until "a pattern of tortious conduct by inadequately trained employees" makes the need for further training "plainly obvious." See Id. at 407-08.

Again, comparing Plaintiffs' theory of the case with that of the plaintiffs in Brown, it is apparent that Clements, Paré, and the City of Providence are immune from suit. Here, Plaintiffs' complaint fails to demonstrate the requisite knowledge element. The case law is clear that a single incident is not enough to show supervisory liability.  See, e.g.,  City of Oklahoma v. Tuttle, 471

U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed2d 791 (1985) (single incident insufficient to establish liability in absence of facially unconstitutional policy); <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87, 93 (1st Cir. 1994) (treating as "an important factor . . .whether the supervisor was put on notice of behavior which was likely to result in the violation of constitutional rights"); <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1161 (1st Cir. 1989) ("a 'single incident' of misconduct, without other evidence, cannot provide the basis for municipal liability under §1983.  Such a result would be the equivalent of imposing respondeat superior liability upon the municipality").

As the Fifth Circuit noted in <u>Davis v. City of North Richland Hills,</u> 406 F.3d 375, 383 (5th Cir. 2005):  "[w]hile the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party."  406 F.3d at 383.  Plaintiffs' instant complaint fails to allege or establish anything other than a single incident involving Mr. Gonsalves. No facts are alleged to support a custom or policy or the Clements, Paré, or the City of Providence had knowledge that the defendant officers posed a grave risk of violating the constitutional rights of others.

The alleged facts contained in the Plaintiff's complaint that are used to support his claim of municipal liability are clearly deficient in that there is no way one could reasonably infer the Defendant was on notice of the risk of constitutional violations similar to the types alleged in the complaint. Thus, the factual allegations in the complaint as they relate to support an inference of municipal liability are in fact facially *implausible* and the Defendants', Clements, Paré, and the City of Providence, motion to dismiss should be granted.

19

      d. **The Motion to Dismiss should be granted in favor of the City of Providence as to Counts four (4) and twelve (12) because in citing R.I. Gen. Law §31-33-6 as a basis of liability results in unconstitutional use of this statute as applied to the City of Providence.**

Plaintiffs cite as a basis of liability against the City of Providence R.I. Gen. Law §31-33-6, which states as follows:

> Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, lessee, or bailee, expressed or implied, the driver of it, if other than the owner, lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, lessee, or bailee, of the motor vehicle unless the driver shall have furnished proof of financial responsibility in the amount set forth in chapter 32 of this title, prior to the accident. For the purposes of this section, the term "owner" shall include any person, firm, copartnership, association, or corporation having the lawful possession or control of a motor vehicle under a written sale agreement. R.I. Gen. Law §31-33-6.

The complaint in Count 4 states as follows:

> 61. At all times relevant hereto, defendants Endres and McParlin were operating the motor vehicles owned by defendant City of Providence with the City's full knowledge and consent.
> 62. Defendant City of Providence, as owner of the motor vehicles being operated by defendant John and Jane Does Alias 1-20, is liable to Gonsalves pursuant to R.I.G.L. 31-33-6. <u>E.C.F. No. 1,</u> ¶¶61, 62.

Count 12 similarly reads:

> 115. At all times relevant hereto, defendants John and Jane Does, Alias 1-10 were operating the motor vehicles owned by defendant City of Providence with the City's full knowledge and consent.
> 116. Defendant City of Providence, as owner of the motor vehicles being operated by defendant John and Jane Does Alias 1-20, is liable to Gonsalves pursuant to R.I.G.L. 31-33-6. <u>E.C.F. No. 1,</u> ¶¶115, 116.

To the extent this state statute holds the defendant City of Providence liable for any alleged constitutional harms by virtue of the City of Providence simply being the owner of the alleged motor vehicle(s) at issue in this case, this would be a violation of the long-standing principle that

neither municipal liability nor supervisory liability can be premised on the doctrine of respondeat superior, as is discussed <u>supra</u>. Therefore, counts four (4) and twelve (12) should be dismissed.

## IV.    Conclusion

WHEREFORE, for all the reasons outlined herein, the Defendants' motion to dismiss should be granted.

Defendants,

By their Attorneys,

JEFFREY DANA
CITY SOLICITOR


/s/ Kevin F. McHugh
Kevin McHugh (#3927)
Senior Assistant City Solicitor
Providence Law Department
444 Westminster Street, Suite 220
Providence, Rhode Island 02903
401-680-5333 (tel)
401-680-5520 (fax)
kmchugh@providenceri.gov

/s/ Steven B. Nelson
Steven B. Nelson (#8142)
Senior Assistant City Solicitor
snelson@providenceri.gov

/s/ Jillian H. Barker
Jillian H. Barker (#8353)
Associate City Solicitor
jbarker@providenceri.gov

## **CERTIFICATION**

It is hereby certified that I filed the within document with the United States District Court on this 15th day of March 2021, and that a copy is available for viewing and downloading via the ECF system, to the following counsel of record:

Amato A. DeLuca
DeLuca and Associates
199 North Main Street
Providence, RI 02903
bud@delucaandassociates.com

Jude E. Kerrison
Karns and Kerrison
850 Aquidneck Avenue
Unit A9
Middletown, RI 02842
jude@karnslaw.com

Michael J. Colucci, Esq.
Olenn & Penza, LLP
530 Greenwich Avenue
Warwick, Rhode Island 02886
mjc@olenn-penza.com


/s/ Crystal Holt