UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KENDRA THIBAULT, *in her*                    :
*Capacity as* GUARDIAN of                    :
JHAMAL GONSALVES and                         :
TIA TRIBBLE, *in her Capacity as*            :
GUARDIAN of JHAMAL GONSALVES                 :
                                             :
            v.                               :        C.A. No. 1:21-CV-00021-WES-LDA
                                             :
HUGH T. CLEMENTS, JR.,                       :
*Individually and in his official capacity* :
*as Chief of Police of the Providence*       :
*Police Department;*                         :
STEPHEN PARE, *Individually and in his*      :
*official capacity as Commissioner of Public*:
*Safety for the City of Providence;*         :
KYLE ENDRES, *Individually and in his*       :
*Official Capacity as an Officer in the*     :
*Providence Police Department;*              :
BRAD McPARLIN, *Individually and in his*     :
*Official Capacity as an Officer in the*     :
*Providence Police Department;*              :
THE CITY OF PROVIDENCE, *by and*             :
*through its Treasurer,*                     :
JAMES J. LOMBARDI, III; and                  :
OFFICERS JOHN AND JANE                       :
DOES, ALIAS 1-10, *in their Individual*      :
*and Official Capacities*                    :

## PLAINTIFF'S OPPOSITION TO DEFENDANTS CLEMENTS, PARÉ, AND THE CITY OF PROVIDENCE'S MOTION TO DISMISS

Plaintiff Jhamal Gonsalves, by and through his guardians, Kendra Thibault and Tia

Tribble, objects to the motion to dismiss filed by the defendants Hugh T. Clements, Jr.,

Stephen Paré, and the City of Providence (the defendants). These three defendants have

collectively moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

arguing that the plaintiff's complaint does not state a claim upon which relief can be granted.

Specifically, they argue that the facts alleged in the complaint do not state plausible claims of

relief for supervisory liability under 42 U.S.C. § 1983 against defendants Hugh T. Clements,

Jr. and Steven Paré, nor for municipal liability against the City of Providence, and also move to dismiss state law claims deriving from negligence claims against codefendants Kyle Endres and Brad McParlin for the same reasons. In doing so, they direct the Court to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and related cases, which collectively stand for the proposition that plaintiffs must allege highly specific facts to raise a plausible case of purposeful discrimination on the part of a supervisory government official. When such a claim is brought, a plaintiff must allege facts sufficient to overcome the presumptive normal scenario: that the action taken was pursued for lawful, nondiscriminatory reasons separate from any claimed discrimination.

This case arises out of injuries suffered by Jhamal Gonsalves on October 18, 2020, in connection with an effort to seize and arrest him by codefendants Endres and McParlin,[1] both officers of the Providence Police Department. *See* Pl.'s Ex. 1, Am. Compl., at 1-2, ¶¶ 1-6 (Jan. 25, 2021).[2] The plaintiff has alleged that the moving defendants' deliberate indifference to the hiring, training, supervision, and enforcement of policies related to Endres and McParlin's vehicular pursuit and seizure caused his injuries. It does not allege that the moving defendants deliberately and purposefully discriminated against the plaintiff for any claimed reason of bias. It instead alleges that the defendants were responsible, through inaction, for being deliberately indifferent to the risks of harm created by their inattention and lack of policy enforcement, thus allowing defendants Endres and McParlin to operate their vehicles and engage in pursuit in the manner they did, leading to the plaintiff's injuries.

---

[1] Defendants Endres and McParlin have not joined the instant motion.

[2] Throughout their motion, defendants Clements, Paré, and the City of Providence refer to the Complaint filed in this action, ECF no. 1. This complaint has been amended to properly name the Treasurer of the City of Providence; as no other substantive changes were effected by the previous amendment, the substantive allegations of the Complaint referenced appear to be identical, but for the sake of accuracy, the operative pleading in this matter is currently the Amended Complaint, ECF No. 9, and not the Complaint, ECF No. 1.

The factual allegations in the Amended Complaint state a plausible right to relief by alleging that the defendants were deliberately indifferent to the plain risks of harm presented by the failure to create, enforce, and maintain appropriate standards for the employment of police vehicles in pursuit and attempted seizures, and that the employment of appropriate policy action by these defendants would have prevented the constitutional harms occasioned in this case. In addition, the state law claims attacked by the defendants in this motion are not predicated upon the § 1983 claims brought by the plaintiffs; they derive from the City's alleged ownership of the vehicles involved in the additional negligence claims in this action, claims which are not attacked in this motion to dismiss, and which impose vicarious liability by state law. They do not rise or fall with the § 1983 claims in this action, and the arguments advanced against them are simply inapposite to the nature of these claims. The defendants' motion, therefore, should be denied. Lastly, in the event that the Court finds that the defendants' motion has merit, the Court should grant the plaintiff leave to amend under Rule 15; a motion to this effect is being filed contemporaneously with this opposition, as the pleading issues raised by the defendants are technical in nature at best, and the defendants cannot meet the burden of showing that there is no set of facts under which the plaintiff can state plausible claims of relief.

## BACKGROUND

The plaintiff has alleged the following facts in this action, which the Court should take as true for the purposes of a motion dismiss, along with drawing all reasonable inferences from those facts. *See Rodríguez-Ramos v. Hernández-Gregorat*, 685 F.3d 34, 40 (1st Cir. 2012). This civil action arises out of the events of October 18, 2020. Pl.s' Ex. 1, Am. Compl., at 1, ¶ 1, and 4, ¶ 18. On that date, plaintiff Jhamal Gonsalves was driving a moped in a southerly direction on Elmwood Avenue toward the intersection of Elmwood and Park

Avenues. *Id.* at 4-5, ¶¶ 18-19. While the plaintiff was traveling in a safe and normal fashion, defendant Endres began to pursue him, without activating his car's lights or sirens. *Id.* at 5, ¶¶ 20-21. Endres radioed to block in the plaintiff, at which point defendant McParlin pulled into the intersection, blocking the plaintiff's lane of travel. *Id.* at ¶ 22-23. The plaintiff turned his moped to avoid an imminent collision with McParlin's blocking cruiser, and as he did so, veered onto the sidewalk of an adjacent street, where he was struck by Endres's cruiser and a stop sign knocked over by Endres's cruiser. *Id.* at 24-26.

The plaintiff has alleged that defendant Clements was the Chief of the Providence Police Department, employed by the defendant City of Providence, and was its officer presiding over the conduct of codefendants Endres and McParlin. *Id.* at 3, ¶ 9. The Amended Complaint also alleges that defendant Clements was responsible for the hiring, screening, training, supervision, and conduct of codefendants Endres and McParlin. *Id.* Similarly, the Amended Complaint alleges that defendant Paré was the Commissioner of Public Safety for the City of Providence, was employed by the City of Providence, and was a superintendent or presiding individual responsible for the hiring, screening, training, supervision, and conduct of codefendants Endres and McParlin. *Id.* at 3, ¶ 10. The Amended Complaint goes on to allege that defendants Clements and Paré were recklessly indifferent in hiring, screening, and training defendants Endres and McParlin; the Amended Complaint also alleges that Clements and Paré failed to provide adequate training, education, and to discipline Endres and McParlin. *Id.* at 30-31, ¶¶ 145-146.

The Amended Complaint also alleges as fact that the City of Providence, through its superintendent employees, provided no or grossly inadequate training to its police officers in the areas of

- An officer's duties, responsibilities, and conduct to citizens

- An officer's use of force

- An officer's vehicular pursuit of individuals

- An officer's approach and de-escalation of citizen encounters

*Id.* at 32, ¶ 151. The plaintiff has alleged that the policies of inaction and inadequate training were the result of a deliberate decision by the policymakers of the City of Providence, and that as a consequence of Clements and Paré's actions, the plaintiff's injuries occurred. *Id.* at 33, ¶¶ 157-158. Defendants Clements, Paré, and the City of Providence now move to dismiss all claims against each defendant, arguing that they do not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

## ARGUMENT

**I. The standard on a Rule 12(b)(6) Motion to Dismiss requires the Court to accept all well pleaded factual allegations as true and to draw all reasonable inferences from the facts pleaded in favor of the plaintiff, and to shape its analysis by examining the nature of the claim asserted by a plaintiff.**

This action is at the pleading stage, as the defendants have filed a motion to dismiss under Rule 12 in lieu of a responsive pleading. Rule 8 governs the substance of a complaint, and states that it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A party seeking to contend that a complaint fails to meet this standard can then bring a motion to dismiss under Rule 12, and argue that the complaint does not state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility, in turn, is met when the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility is not a "probability requirement" but requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

The application of this framework first requires a discussion of the types of claims implicated by a pleading, as the type of claim cabins the universe of necessary facts.

> In *Twombly*, *supra*, at 553–554, the Court found it necessary first to discuss the antitrust principles implicated by the complaint. Here too we begin by taking note of the elements a plaintiff must plead to state a claim of unconstitutional discrimination against officials entitled to assert the defense of qualified immunity.

*Id.* at 675. *Iqbal* involved a claim brought under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* actions, as the Court is aware, afford a private right of action to individuals for damages suits against federal officers alleged to have violated their constitutional rights, and are an analog to claims against state law officials under 42 U.S. § 1983. *See Iqbal*, 556 U.S. at 675-76. Because government officials—whether state or federal—can act in a variety of fashions that impinge on different constitutional rights, the universe of actionable conduct is quite broad, with different elements attaching to different types of constitutional tort claims. *See, e.g.*, *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (under *Bivens*, "a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages"); *Iqbal*, 556 U.S. at 675 (despite *Bivens'*

Fourth Amendment cause of action, "we have not found an implied damages remedy under the Free Exercise Clause."). In short, "[t]he factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue"—and the same is true under 42 U.S.C. § 1983 in actions against state officials for constitutional violations. *See id.* at 676.

In *Iqbal*, the central issue was that the plaintiff was pursuing a purposeful discrimination claim under the First Amendment, which requires both pleading and proof of a defendant's discriminatory purpose. "Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id.* at 676 (citing *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540–541 (1993) and *Washington v. Davis*, 426 U.S. 229, 240 (1976)). More specifically, as an element of a claim of purposeful discrimination, a plaintiff must plead facts that an action was taken "'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Id.* at 677 (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). For this reason, the factual context that required specific pleading in *Iqbal* focused on the need to plead the "purpose rather than knowledge" required for the specific claim advanced. *Id.*

This framework is the lens through which the *Iqbal* complaint was viewed, and the reason for the ultimate finding of infirmity.

> The allegations here, if true, and if condoned by petitioners, could be the basis for some inference of wrongful intent on petitioners' part. Despite these distinctions, respondent's pleadings do not suffice to state a claim. Unlike in *Twombly*, where the doctrine of *respondeat superior* could bind the corporate defendant, here, as we have noted, petitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic. Yet respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8.

*Id.* at 683. And this issue arose in the context of an available and nondiscriminatory motive for the conduct that gave rise to the *Iqbal* complaint:

> All [the complaint] plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible."

*Id.* (quoting *Twombly*, 550 U.S. at 570). It is the availability of this alternate, licit theory of action that raises doubts as to the facial plausibility of a complaint's factual allegations. The facts necessary to establish purposeful discrimination under the First and Fifth Amendments are not the same, though, as those required to establish deliberate indifference to the use of excessive force in violation of the Fourth Amendment.

The First Circuit has recognized that "One point of the Fourth Amendment is to protect an individual from a police officer's use of excessive force in effectuating a seizure." *Stamps v. Town of Framingham*, 813 F.3d 27, 35 (1st Cir. 2016) (citing *Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010)). A Fourth Amendment claim requires "as an initial matter, that there was a seizure within the meaning of the Fourth Amendment, and then that the seizure was unreasonable." *Id.* Discussing *Brower v. County of Inyo*, 489 U.S. 593 (1989), the First Circuit has held that "an officer can be held liable under the Fourth Amendment for an intentional but unreasonably dangerous seizure[.]" *Id.* at 36-37. And the deployment of an unreasonably excessive degree of force in effectuating a seizure is, of course, a form of Fourth Amendment violation. *Tennessee v. Garner*, 471 U.S. 1, 8-12 (1985). These constitutional violations can then go on to give rise to related forms of liability: supervisory and municipal liability under § 1983.

A supervisory official may be held liable for conduct under § 1983 if "(1) the behavior of [his] subordinates results in a constitutional violation, and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (quoting *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902 (1st Cir. 1988) ((alterations original))). Similarly, a municipality can be liable for the violation of § 1983 if, "first, that plaintiff's harm was caused by a constitutional violation, and second, that the City be responsible for that violation[.]" *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005). Municipal responsibility is in turn shown by demonstrating that 1) the "alleged municipal action at issue must constitute a 'policy or custom' attributable to the City"; 2) that "the municipal policy or custom actually have caused the plaintiff's injury"; and 3) "that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" *Id.* (citing *Silva v. Worden*, 130 F.3d 26, 31–32 (1st Cir. 1997) and *County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). Neither of these actions raise a question of vicarious liability, as that form of liability is not permitted by the language of § 1983. *See, e.g.*, *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, the purpose of the additional elements relating to supervisory liability and municipal liability is to ensure that a factual basis is present for a jury to find the requisite misconduct on the part of supervisors and municipalities themselves, as a result of inattention, gross negligence, policy, and deliberate indifference to a plaintiff's rights.

All of this matters because the context-specific nature of a claim governs what facts must be alleged, and whether any of the allegations are merely conclusory. In *Iqbal*, the complaint alleged only generally that the officials involved—the Attorney General and

Director of the Federal Bureau of Intelligence—had acted with a purposefully discriminatory motive. 556 U.S. at 680-81 (allegations that defendants acted "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest" and that the two were the "principal architect" and an "instrumental" actor in effectuating the policy). The fact allegations, of action or inaction alone, were therefore insufficient to meet the requirement that the *Iqbal* plaintiff had to satisfy: to plead facts showing purposeful discrimination *by* the named party.

> All [the complaint] plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible.

*Id.* at 683 (quoting *Twombly*, 550 U.S. at 570). The factual allegations suggested legal conduct, just as much, if not more, than illegal conduct. The same was true with the corporate action and inaction alleged to violate antitrust law in *Twombly*: "We think that nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy." *Twombly*, 550 U.S. at 566. In both cases, the issue with the complaints was that the factual allegations did not enable a sufficiently strong inference of illegality, because action or inaction did not speak to the motive that had to be proved in each case: purposeful discrimination in *Iqbal* and concerted anticompetitive activity in *Twombly*.

This fine-tuned and motive-dependent distinction is not present in this case. The issues presented by this action are more straightforward. The initial question is: has the plaintiff sufficiently alleged a predicate constitutional violation committed by defendants Endres and McParlin? The defendants make no argument that the plaintiff has not done so, and so the question then turns to the distinct elements of supervisory and municipal liability.

For supervisory liability, the element required is whether the supervisory defendants' action or inaction was affirmatively linked to Endres and McParlin's behavior in the form of supervisory encouragement, condonation, acquiescence or gross negligence amounting to deliberate indifference. *See Pineda*, 533 F.3d at 54. And for municipality liability, whether the City of Providence had a policy or custom that actually caused the plaintiff's injury, and that the City's policy was adopted by a choice of deliberate indifference on the part of the City and its officials. *See Young*, 404 F.3d at 26.

## II. The factual allegations in the Amended Complaint raise plausible claims to relief from defendants Clements, Paré, and the City of Providence.

Viewing the factual allegations contained in the Amended Complaint through the lens of the claims asserted, which differ from those advanced in *Iqbal* and *Twombly*, it is apparent that they advance sufficient factual support to make the claims brought in this action plausible. The plaintiff here has no need to allege factual support from which the Court can plausibly infer that any defendant took action motivated by the desire to perniciously discriminate; instead, the plausible inference to be drawn is only that the supervisory defendants allegedly failed to take action in a manner consistent with deliberate indifference to the plaintiff's constitutional rights. Similarly, for the municipal liability claims against the City of Providence, the facts alleged in the Amended Complaint raise a plausible inference that the City had a municipal policy or custom, that the policy or custom caused the plaintiff's injury, and that the policy or custom reflects the City's deliberate indifference to the plaintiff's constitutional rights.

The thrust of the defendants' motion is that absent minute-by-minute allegations of the exact actions or inactions leading to the plaintiff's injuries, no supervisory or municipal liability claims can be stated. But both this and other circuits have rejected this standard, noting that *Iqbal* is focused on factual allegations supporting a culpable state of mind in

discrimination cases, and does not import that standard into different constitutional claims. For example, the First Circuit reversed the dismissal of a complaint that had been held insufficient by the United States District Court for the District of Puerto Rico where a plaintiff alleged facts sufficient to infer that a supervisory defendant "bore the ultimate responsibility for overseeing and directing all administrative, operational, training, and disciplinary aspects of the PRPD." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 516 (1st Cir. 2016). And such a claim could be brought in the context of a plaintiff who "could [only] reasonably know (or be expected to ascertain) at the time he filed suit was that an unidentified police officer had shot him for no apparent reason." *Id.* Plausibility arises in the context of a claim itself, and is not imposed as an abstract standard.

The claim at issue here is not nearly so difficult to conceive; police officers drive on the public thoroughfares every day. On many of those days, they are required to attempt seizures and initiate vehicular pursuit. These actions pose a plain risk of harm to the public in general and, in this case, to the plaintiff in particular. It is no stretch to say that, as alleged, supervisory neglect and failure to train officers on the appropriate means to effectuate seizures and conduct vehicle pursuits poses a plain and strong likelihood of harm, and the failure to take appropriate action reflects a deliberate indifference to the likelihood of constitutional violations arising from this conduct. The obvious inference is that if the supervisory defendants had adequately trained and prepared the officers of the Providence Police Department, the events giving rise to this action would not have occurred. And that is the point of pleading under the *Twombly-Iqbal* standard: "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556. This is in accord with the First Circuit's holding that "[a] high

degree of factual specificity is not required at the pleading stage." *Guadalupe-Báez*, 819 F.3d at

517 (quoting *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 56 (1st Cir. 2013)).

     *Morales v. Chadbourne* is similar to this case in the same fashion, rather than different,

as the defendants suggest. The First Circuit examined whether it was plausible that

Immigrations and Customs Enforcement supervisors had created or allowed a policy of

detaining naturalized citizens without probable cause. *See* 793 F.3d 208, 212-14 (1st Cir.

2015). The *Morales* plaintiff alleged specifically that the supervisory defendants

> "knew or should have known that their subordinates, including Defendant
> Donaghy, regularly ... issued immigration detainers against individuals such as
> Ms. Morales, without conducting sufficient investigation and without
> probable cause to believe that the subject of the immigration detainer was a
> non-citizen subject to removal and detention." The complaint adds that
> Chadbourne and Riccio "formulated, implemented, encouraged, or willfully
> ignored [ICE's] policies and customs [in Rhode Island] with deliberate
> indifference to the high risk of violating Ms. Morales's constitutional rights"
> and failed to "change[ ] these harmful policies and customs" although they
> "had the power and the authority to change [them] by, for instance, training
> officers such as Defendant Donaghy to perform an adequate investigation
> into individuals' citizenship and immigration status before issuing detainers."

*Id.* at 221 (internal citations omitted) (alterations original). The allegations are not

functionally distinct from those in this case, namely, that Clements and Paré were

responsible for the training and supervision of Endres and McParlin, failed to do so

adequately despite their responsibility to do so, and by their inaction or failure to act caused

the constitutional violation that injured the plaintiff. Pl.'s Ex. 1, Am. Compl. at 3, ¶¶ 9-10, at

30-31, ¶¶ 145-146. In addition, the Amended Complaint, like the complaint in *Morales*,

specified the areas of deficient training, alleging that Clements and Paré provided no or

grossly inadequate training in officer duties, responsibilities, and conduct with citizens, use of

force, vehicular pursuit, and officer approach and de-escalation. *Id.* at 32, ¶ 151.

     The purpose of the pleading rules articulated in Rule 8 are to "give notice to [a

defendant] of the nature of [a plaintiff's] claim against him and to give him a fair opportunity

to defend against it." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The plaintiff has provided that. The other precedent cited by the defendants' motion instead directs the Court to cases where the links between supervisory and municipal policy on the one hand, and the conduct at issue on the other, are far more attenuated, as they were in *Iqbal. Ocasio-Hernández v. Fortuño-Burset* involved, as *Iqbal* did, an explicit claim of purposeful discrimination "in violation of the First Amendment to the United States Constitution." 640 F.3d 1, 4 (1st Cir. 2011). To meet this standard, as described above, a plaintiff must plead facts that bear upon an actor's specific purpose in acting, and raise an inference that the facts alleged support an inference of invidious discriminatory intent; no such requirement is present in this case, and this distinction accounts for the much more detailed factual pleadings in *Ocasio-Hernández*.

> An actionable claim of political discrimination consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action."

*Id.* at 13 (quoting *Lamboy–Ortiz v. Ortiz–Vélez*, 630 F.3d 228, 239 (1st Cir. 2010)). The plaintiffs in this action need not plead or prove facts that would show the supervisory defendants' motivations; instead the plaintiff must plead facts that show that the defendants failed to act in training and supervising Endres and McParlin in a fashion that evinces their deliberate indifference to likely constitutional violations. This is exactly what has been alleged in this case.

The defendants also direct the Court to *Saldivar v. Racine*, 818 F.3d 14 (1st Cir. 2016); *Saldivar* is instructive, though not in the manner the defendants suggest. It is not a case that provides a useful outline for what is factually necessary to plead in a case such as this, where the link between routine official duties of police officers—duties which, despite their frequency, carry a plain and obvious risk of the potential for both physical harm to others

and the opportunity for an attendant constitutional violation. Instead, it illustrates that some factual contexts are not amenable to recognition of an immediately plausible link between the predicate police conduct and the supervision of that conduct. In *Saldivar*, the plaintiff alleged that she had called the Fall River Police Department in order to report the harassment of her child at school; an officer arrived at her apartment, but then, without warning, drew his service weapon and raped the plaintiff at gunpoint. 818 F.3d at 16. The action was dismissed because there was no nexus between an alleged rape and the normal supervision, training, and discipline provided by the supervisory officers and municipality. *Id.* at 18-20. Indeed, it is the extreme nature of the defending officer's departure from the normal scope of his duties that enabled adjudication at the pleading stage: "as we have noted, seemingly *all* of our analogous § 1983 supervisory liability cases have been resolved at summary judgment, or at other later stages of the litigation." *Id.* at 20 (emphasis added). Rather than establishing a benchmark for pleading cases that arise out of routine police duties that are within the scope of normal supervision and training, *Saldivar* recognizes that more extreme or unusual conduct outside the expected routine of police activity and attendant supervision requires more factual pleading to make supervisory and municipal liability plausible; the more unusual the conduct, the more detailed the allegations needs must be.

Nor does a predicate constitutional violation require knowledge of previous instances of conduct, as the defendants allege. Even accidental excessive force employed within the context of an intentional seizure is still a constitutional violation. *Stamps*, 813 F.3d at 36-37. This is the case because some police conduct carries with it an obvious risk of harm; police officers use dangerous instrumentalities in the course of their work. That action carries with it an obvious risk of harm and the potential for attendant constitutional

violations. Improper or excessive force is a reasonable and predictable result of a failure to train, supervise, and control the activities of police. It is in more attenuated cases, like those that turn upon proof of personal and invidious discriminatory intent on the part of a supervisor, or far less foreseeable conduct like an alleged rape committed by an officer during the course of his duties, that the more detailed level of fact allegations discussed in the cases above is required.

This case turns upon allegations that defendants Endres and McParlin pursued plaintiff Jhamal Gonsalves in order to seize him, did so by attempting to box in his open, unprotected moped with their police cruisers, and as a consequence, struck his moped and a stop sign, causing severe and permanent injuries. The plaintiff has alleged that they did so because they were not trained in the use of force in seizures and in the use of their police vehicles for pursuit, that defendants Clements and Paré were responsible for this training and supervision, and were employed as policy making individuals by defendant the City of Providence to do so. The plaintiff further alleges that the lack of adequate training, supervision, and discipline connected to this activity was a conscious policy decision of inaction made for the City of Providence by Clements and Paré, the persons authorized by the City to set such a policy. The fact context of this case is not one in which the predicate constitutional violation is somehow attenuated from ordinary supervision or training; this case does not involve an officer suddenly acting in some unforeseeable manner.

The defendants seek to make much of the fact that the plaintiff is not currently in possession of the detailed knowledge that they assert is necessary to adequately plead the case. This knowledge is in the possession of the defendants, and there is every reasonable expectation that discovery will reveal further information. The Rules of Civil Procedure require a defendant to have fair notice of a plausible claim so that it might prepare its

defense; the Amended Complaint satisfies this standard. And especially as claims must be "indicated 'based on what is known'" at the time of their filing, it is appropriate to deny a motion to dismiss where "'some of the information needed may be in the control of the defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)). Complaints "must be read as a whole" and there need not be "a one-to-one relationship between any single allegation and a necessary element of the cause of action." *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (citing *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013). "For pleading purposes, circumstantial evidence often suffices to clarify a protean issue." *Id.* (quoting at *Rodríguez–Reyes*, at 56). In this case, a common-sense view of the circumstances alleged supports "a reasonable expectation that discovery may yield evidence of the government's allegedly tortious conduct." *Id.*

Virtually all police officers in the United States have two highly dangerous instrumentalities with them at all times: firearms and police vehicles. It is eminently plausible that, absent appropriate training, one or both of these items will be misused. The defendants have elaborated upon no alternative scenario where the factual allegations in the Amended Complaint, that supervisory Clements and Paré did not train or supervise the conduct of Endres and McParlin, suggest permissible conduct. The fair and plausible inference of the Amended Complaint, read as a whole, is that the plaintiff alleges that the City of Providence, through these policymaking officials, has made a deliberate choice to neither train its officers on the use of force in seizure nor in vehicular pursuit. This is plausibly culpable conduct.

**III.** **The Motion to Dismiss mischaracterizes the basis of the claims brought against the City of Providence under R.I. Gen. Laws § 31-33-6 and must be denied.**

The defendants' final argument is that the plaintiff's claims for liability under R.I. Gen. Laws § 31-33-6 should be dismissed, as the operation of that statute would impose vicarious liability upon the City of Providence, in contravention of the law applicable to § 1983 claims discussed above. This theory does not accurately state the effect of this law, nor the allegations in the Amended Complaint. Of note, the claims for liability under R.I. Gen. Laws § 31-33-6 are pleaded as part of the claims of negligence and gross negligence pleaded against defendants Endres and McParlin. *See* Pl.'s Ex. 1, Am. Compl., at 10-13, ¶¶ 50-64. As the defendants note in their memorandum, Defs.' Memo. at 20, Section 31-33-6 imposes liability on the owners of vehicles that are operated by persons who do so with the owners' consent. R.I. Gen. Laws § 31-33-6.

The statute is a straightforward imposition of vicarious liability upon a vehicle owner, and operates as a savings clause to ensure that vehicles within the state of Rhode Island carry appropriate insurance. *Puerini v. LaPierre*, 208 A.3d 1157, 1164-65 (R.I. 2019) (discussing purpose of § 31-33-6). It is not clear why the City raises a point about the constitutionality of the statute, as its application in this matter is pleaded as a part of the parallel negligence claims against codefendants Endres and McParlin; the City is free to deny that it owned the vehicles, that Endres and McParlin operated the vehicles with the City's consent, or that the technical requirements of the statute in fact were met, but it has identified no substantive defect with the pleading itself. The City's questions concerning potential § 1983 liability being imposed by Rhode Island law are not alleged in the Complaint, as the claim for vicarious liability arises out of the vicarious liability imposed by state law derived from state law negligence claims. Section 1983 is not implicated by these

claims. The Amended Complaint therefore states claims under R.I. Gen. Laws § 31-33-6 giving rise to vicarious liability for codefendants' Endres and McParlin's negligence separate and apart from the alleged municipal liability for violation of § 1983; the points raised by the City do not entitle it to dismissal. It is anticipated that, as in all cases before the Court, careful management of this action by the Court as the matter is reached for trial will preclude the possibility of issue confusion or duplicative recovery.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendants' motion to dismiss. In the alternative, the Court should grant the plaintiff leave to amend his complaint in the form accompanying the contemporaneous motion for leave to amend and deny the motion to dismiss.

<div style="margin-left:40%">

Plaintiff,
By his Attorneys,

/s/ Amato A. DeLuca
Amato A. DeLuca (#0531)
Matthew D. Provencher (#9497)
**DeLUCA & ASSOCIATES, LTD.**
199 North Main Street
Providence, RI  02903
(401) 453-1500
(401) 453-1501 Fax
bud@delucaandassociates.com
matt@delucaandassociates.com

</div>

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KENDRA THIBAULT, *in her*     :
*Capacity as* GUARDIAN of     :
JHAMAL GONSALVES and     :
TIA TRIBBLE, *in her Capacity as*     :
GUARDIAN of JHAMAL GONSALVES     :
    :
    v.     :     C.A. No. 1:21-CV-00021-WES-LDA
    :
HUGH T. CLEMENTS, JR.,     :
*Individually and in his official capacity*     :
*as Chief of Police of the Providence*     :
*Police Department;*     :
STEPHEN PARE, *Individually and in his*     :
*official capacity as Commissioner of Public*     :
*Safety for the City of Providence;*     :
KYLE ENDRES, *Individually and in his*     :
*Official Capacity as an Officer in the*     :
*Providence Police Department;*     :
BRAD McPARLIN, *Individually and in his*     :
*Official Capacity as an Officer in the*     :
*Providence Police Department;*     :
THE CITY OF PROVIDENCE, *by and*     :
*through its Treasurer,*     :
JAMES J. LOMBARDI, III; and     :
OFFICERS JOHN AND JANE     :
DOES, ALIAS 1-10, *in their Individual*     :
*and Official Capacities*     :

## **CERTIFICATE OF SERVICE**

I hereby certified that a true and accurate copy of the following document:

*Plaintiff's Opposition to Defendants*
*Clements, Paré, and the City of Providence's*
*Motion to Dismiss*

was sent by electronic mail only on this 5th day of April 2021 to the following counsel of record:

Kevin F. McHugh, Esq.
Senior Assistant City Solicitor
Providence Law Department
444 Westminster Street, Ste. 220
Providence, RI 02903

*Counsel for Hugh T. Clements, Jr.,*
*Steven Pare, and City of Providence*
*by and through its Treasure*
*James J. Lombardi III*

Michael J. Colucci, Esq.
Olenn & Penza, LLP
530 Greenwich Avenue
Warwick, Ri 02886
*Counsel for Kyle Endres and*
*Brad McParlin*

/s/ Amato A. DeLuca
Amato A. DeLuca