```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
JHAMAL GONSALVES, et al.,          )
                                   )
       Plaintiffs,                 )
                                   )
    v.                             )   C.A. No. 21-021 WES
                                   )
HUGH T. CLEMENTS, JR., et al.,     )
                                   )
       Defendants.                 )
_____)
```

**MEMORANDUM AND ORDER**

Defendants Hugh T. Clements, Jr., Steven Paré, and the City of Providence move to dismiss the claims against them. Plaintiff Jhamal Gonsalves seeks to amend the operative pleading. For the reasons that follow, Defendants' Motion to Dismiss, ECF No. 23, is GRANTED IN PART AND DENIED IN PART, and Plaintiff's Motion for Leave to Amend the Amended Complaint, ECF No. 25, is GRANTED.

I.   BACKGROUND

For the purposes of this Order, the Court accepts as true Plaintiff's allegations in the Proposed Second Amended Complaint, ECF No. 25-2.

Gonsalves was riding a moped scooter on Elmwood Avenue in Providence, when Defendant Officer Kyle Endres[1] began to pursue him. Proposed Second Am. Compl. ¶¶ 18-21. Via radio, Endres

---

[1] All officers discussed herein are Providence police officers.

instructed Defendant Officer Brad McParlin, who was sitting at an upcoming traffic light, to "box him in." Id. ¶ 3. As Gonsalves drew near, McParlin drove his vehicle into the intersection, blocking the moped's path. Id. ¶ 23. Forced to turn abruptly, Gonsalves lost control, crashed into a wall, and fell to the ground. Id. ¶¶ 24-26. Moments later, Endres's cruiser hurtled into the scene and struck Gonsalves. Id. ¶ 26. At no point during these maneuvers did either officer activate his lights or sirens. Id. ¶¶ 21, 23. Gonsalves's resulting injuries are severe and permanent. Id. ¶ 27.

Gonsalves (through Kendra Thibault and Tia Tribble, his temporary guardians) brings a variety of constitutional and tort claims against Endres, McParlin, Providence Chief of Police Hugh T. Clements, Jr., Providence Commissioner of Public Safety Stephen Paré, several unnamed officers,[2] and the City of Providence. While Endres and McParlin have answered the Amended Complaint, see Answer, ECF No. 22, Clements, Paré, and the City have sought to dismiss all claims against them, see Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Mot. to Dismiss Mem.") 4-5, ECF No. 23-1.

II. LEGAL STANDARD

If a complaint fails to allege facts that plausibly state a claim for relief, dismissal is required. See Ashcroft v. Iqbal,

---

[2] All individual Defendants are sued in their individual and official capacities.

556 U.S. 662, 678-680 (2009). Plaintiff contends that the Amended Complaint (the current operative pleading), ECF No. 9, vaults the bar, and, moreover, that any purported deficiencies are cured in the Proposed Second Amended Complaint. See Pl.'s Opp'n to Defs.' Mot. to Dismiss 13, 18-19, ECF No. 26. However, Defendants argue that Plaintiff's proposed amendment would be futile. See Defs.' Mem. Supp. Obj. to Pl.'s Mot. to Amend 4, ECF No. 30-1. Therefore, the Court tests the mettle of the Proposed Second Amended Complaint instead of the prior pleading's. See Glassman v. Computervision Corp., 90 F.3d 617, 622-23 (1st Cir. 1996) (stating that leave to amend must be granted "[u]nless there appears to be an adequate reason for the denial of leave to amend[,]" such as futility, which "means that the complaint, as amended, would fail to state a claim upon which relief could be granted").

III. DISCUSSION

    A.  Municipal and Supervisory Constitutional Claims

Under 42 U.S.C. § 1983, a municipality can be held liable for the constitutional violations of its employees where those violations were caused by municipal policy or custom. Monell v. N.Y. City Dept. of Social Servs., 436 U.S. 658, 690-92 (1978). These "include[] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 60-61 (2011). "[A] municipality's

3

failure to train its employees in a relevant respect" constitutes a policy or custom only if it "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. at 61 (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)).

Similarly, a supervisor is liable for a subordinate's constitutional violations only if "the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514–15 (1st Cir. 2016) (cleaned up) (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). Moreover, the plaintiff must show that the supervisor's acts or omissions caused the constitutional violation at issue. Id. at 514.

To sufficiently plead deliberate indifference, a complaint must plausibly allege "(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists." Parker v. Landry, 935 F.3d 9, 15 (1st Cir. 2019) (quoting Guadalupe-Báez, 819 F.3d at 515). Generally, this requires a pattern of prior similar constitutional violations committed by subordinates. See Connick, 563 U.S. at 62 (citing Bd. of Comm'rs of Bryan Cty. v. Brown, 520

U.S. 397, 409 (1997)); Saldivar v. Racine, 818 F.3d 14, 18–19 (1st Cir. 2016).

Because Gonsalves does not allege a history of analogous violations, Defendants contend that he has not plausibly pleaded a claim of deliberate indifference. Mot. to Dismiss Mem. 16, 18. However, the Supreme Court has stated that "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." Brown, 520 U.S. at 409 (citing Canton, 489 U.S. at 390 & n.10). "The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, 563 U.S. at 64. For example, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be so obvious[] that failure to do so could properly be characterized as deliberate indifference to constitutional rights." Canton, 489 U.S. at 390 n.10 (internal quotation marks and citation omitted).

Lower courts have contemplated that, in the right case, this type of single-incident liability could also apply to claims of supervisory liability. See Cozzo v. Tangipahoa Par. Council--Pres. Gov't., 279 F.3d 273, 288 (5th Cir. 2002); E.A.F.F. v. United

5

States, 955 F. Supp. 2d 707, 745-46 (W.D. Tex. 2013); Qadir v. Wilson, C.A. No. 4:17-2193-TLW-SVH, 2019 WL 8471273, at *5 (D.S.C. May 6, 2019), report and recommendation adopted, C.A. No. 4:17-cv-02193-TLW, 2020 WL 1892184 (D.S.C. Apr. 15, 2020), aff'd, 831 Fed. App'x. 630 (4th Cir. 2020) (unpublished).[3]

Plaintiff alleges that, as policymakers for the City, Clements and Paré were responsible for the training of Endres and McParlin. Proposed Second Am. Compl. ¶¶ 31-33, 36. Furthermore, despite having actual or constructive knowledge that officers "routinely employ force in the seizure of persons, engage in vehicular pursuits, and that such pursuits pose a plain and substantial risk of constitutional violations and harm to civilians[,]" Clements and Paré failed to issue policies or provide any training regarding "the reasonable and appropriate use of force by police officers in seizing individuals, utilizing their vehicles in pursuit of individuals, and the de-escalation of police-civilian encounters in a manner designed to reasonably and prudently minimize the risks of civilian harm." Id. ¶¶ 30-38.[4]

---

[3] To be clear, neither party has briefed this theory, and so the Court is not holding that single-incident supervisory liability for failure to train is a viable theory, either in the instant case or generally. If developed, the Court will reach that question at an appropriate time.

[4] Defendants argue that these and other allegations are conclusory recitations of the elements of the cause of action, lacking the level of detail required for plausibility. Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Mot. to Dismiss Mem.")

Vehicular pursuits involve split-second decisions, complicated tactical considerations, and a significant risk of injury or death to individuals being pursued, bystanders, and officers. And, like the firearms discussed in Canton, vehicles can be weaponized to effect deadly force. See 489 U.S. at 390 n.10 (citing Tennessee v. Garner, 471 U.S. 1 (1985)). Because of this inherent dangerousness, Plaintiff may be able to establish that the risk of constitutional violations was so patently obvious or highly predictable that the supervisory and municipal Defendants are liable despite a lack of prior incidents.[5] See Shadrick v. Hopkins Cty., Ky., 805 F.3d 724, 740-42 (6th Cir. 2015) (reversing trial judge's decision granting the defendants' motion for summary judgment where the defendant "did not have a training program" to guide nurses at detention center in treating inmates so as to avoid constitutional violations); Thomas v. Cumberland Cty., 749 F.3d 217, 225 (3d Cir. 2014) (vacating grant of a defendant's motion for summary judgment because prison with frequent fights among inmates failed to provide de-escalation and intervention training to correctional officers); Jenkins v. Woody,

---

8, ECF No. 23-1. However, Plaintiff alleges that zero training was provided on these topics. Therefore, it is hard to see how more details could be provided.

[5] For this same reason, the Court disagrees with Defendants' argument that the allegations of deliberate indifference are conclusory and therefore "not entitled to the assumption of truth." Mot. to Dismiss Mem. 6.

7

C.A. No. 3:15CV355, 2017 WL 342062, at *17 (E.D. Va. Jan. 21, 2017) (denying the defendant's motion for summary judgment where "subordinates did not receive any training on the particular issue at stake" (emphasis removed)); see also Saldivar, 818 F.3d at 20 ("[S]eemingly all of our analogous § 1983 supervisory liability cases have been resolved at summary judgment, or at other later stages of the litigation."); Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012) ("'[S]ome latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where, as here, 'some of the information needed may be in the control of [the] defendants.'" (quoting Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012))).

Additionally, the allegations plausibly support an inference that the lack of training led to the claimed constitutional violations. During the pursuit of Gonsalves, Endres told McParlin to "box him in[,]" presumably meaning that McParlin was supposed to use his cruiser to block Gonsalves's passage. See Proposed Second Am. Compl. ¶ 3. The Complaint further implies that an adequate training program would not have encouraged such dangerous maneuvers, and that well-trained officers therefore would not have attempted to "box [Gonsalves] in." See id. ¶¶ 30-41. According to Plaintiff, Endres and McParlin filled in the blanks of their deficient training by improvising an unconstitutional and nearly fatal tactical maneuver. These allegations make out a plausible

causal nexus.  Accordingly, Defendants' Motion to Dismiss is denied as to the claims of failure to train.

However, that logic does not extend to Plaintiff's theories of inadequate hiring, screening, discipline, remediation, and supervision.  See id. ¶¶ 163-66.  "Unlike the risk from a particular glaring omission in a training regimen, the risk from a single instance of inadequate screening of an applicant's background is not 'obvious' in the abstract; rather, it depends upon the background of the applicant."  Brown, 520 U.S. at 410.  The lack of alleged prior incidents therefore dooms the hiring and screening claims.

The same goes for the claims of inadequate discipline, remediation, and supervision.  If there were no prior unconstitutional acts, there were no opportunities for Clements, Paré, and the City to discipline or correct the officers' behavior.  And if there were no missed opportunities for discipline, it is impossible for a policy against providing discipline to have caused the allegedly unconstitutional acts in this case.  Thus, the claims in Counts XVII and XVIII of improper hiring, screening, supervision, remediation, and discipline are dismissed without prejudice.  See Proposed Second Am. Compl. ¶¶ 156-57, 163-66.[6]

---

[6] As for Count XIX (Vicarious Liability Against City of Providence), the underlying cause of action is not clear.  See Proposed Second Am. Compl. ¶¶ 171-76, ECF No. 25-2.  To the extent that the claim is predicated on the § 1983 claims, the Motion to

9

B.   Vicarious Liability Under R.I. Gen. Laws § 31-33-6

Counts IV and XII allege gross negligence and reckless conduct on the part of Endres, McParlin, and several unnamed Defendants. See id. ¶¶ 69-72, 123-26.  Plaintiff also seeks to hold the City vicariously liable under R.I. Gen. Laws § 31-33-6, which, under certain circumstances, assigns liability to the owner of a vehicle for the tortious conduct of other operators of the vehicle.  See id. ¶¶ 65, 73, 119, 127.

The City argues that these claims violate the principle that municipalities are not subject to vicarious liability.  See Mot. to Dismiss Mem. 20-21.  However, the rule referenced by the City concerns the application of 42 U.S.C. § 1983, not Rhode Island common law.  See Ouellette v. Beaupre, 977 F.3d 127, 140 (1st Cir. 2020); see also Saunders v. State, 446 A.2d 748, 751-52 (R.I. 1982) (holding that the state is vicariously liable where an employee performing a governmental function is "guilty of negligence and [is] not protected by personal immunity").  Of course, certain facets of state law may protect the officers and/or the City from tort liability.  See Schultz v. Foster-Glocester Reg'l. Sch. Dist.,

---

Dismiss is granted, and the claim is dismissed with prejudice. See Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014) (explaining that vicarious liability does not apply to § 1983 claims).  To the extent that Count XIX is predicated on the common law tort claims, the Motion to Dismiss is denied, as Defendants provide no argument for why they are not subject to vicarious tort liability.

755 A.2d 153, 155 (R.I. 2000) (stating that public duty doctrine bars liability for "discretionary governmental actions" except where there is a special duty, the official behaved egregiously, or the official "engaged in activities normally undertaken by private individuals or corporations" (internal quotation marks and citations omitted)); Hatch v. Town of Middletown, 311 F.3d 83, 90 (1st Cir. 2002) (noting "Rhode Island's recognition of a qualified immunity defense under state law"). But without briefing on these questions, the Court will leave them for another day.[7]

Accordingly, the request to dismiss the claims against the City in Counts IV and XII is denied.

IV. CONCLUSION

The claims in Counts XVII and XVIII regarding hiring, screening, discipline, remediation, and supervision are DISMISSED without prejudice. Additionally, to the extent that it relies on 42 U.S.C. § 1983, Count XIX is DISMISSED with prejudice. The remaining claims live on. Accordingly, Defendants' Motion to Dismiss, ECF No. 23, in GRANTED IN PART AND DENIED IN PART. Because the requested amendment is not (aside from the dismissed claims) futile, Plaintiff's Motion for Leave to Amend the Amended

---

[7] Similarly, the Court need not reach the unraised question of whether, as a matter of statutory interpretation, R.I. Gen. Laws § 31-33-6 applies to municipalities.

11

Complaint, ECF No. 25, is GRANTED, and the Clerk is directed to file the Proposed Second Amended Complaint.

IT IS SO ORDERED.

/s/ *WESmith*
William E. Smith
District Judge
Date:  August 6, 2021